Filed 3/27/13  Mitchell v. Irigoyen CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANIEL L. MITCHELL et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>JEAN MICHAEL IRIGOYEN et al.,<br><br>Defendants and Appellants. | F064239<br><br>(Super. Ct. No. CV274320)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

J.M. Irigoyen Law Corporation and J.M. Irigoyen for Defendants and Appellants.

Greater Bakersfield Legal Assistance, Inc., Timothy S. McKinley and Alfred Randal Hernandez for Plaintiffs and Respondents.

-ooOoo-

Appellants, Jean Michael Irigoyen (Irigoyen) and his law corporation, challenge the trial court's denial of their motion to strike the breach of contract, specific

performance, fraud, and intentional infliction of emotional distress action filed by respondents, Daniel L. Mitchell and Karen L. Mitchell, as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure[1] section 425.16. According to appellants, respondents' complaint arose out of a demand letter that appellants wrote to respondents. In this letter appellants threatened to file an unlawful detainer action. Appellants argue that, because threatening litigation is a protected activity, their motion to strike should have been granted.

The trial court correctly denied appellants' motion to strike. Appellants' demand letter may have triggered respondents' complaint and may be evidence in support of the complaint, but it was not the cause of respondents' complaint. Accordingly, the order will be affirmed.

## BACKGROUND

In 2002, respondents rented a mobile home on a small parcel of property located in Weldon from Victor Little (Victor[2]). Respondents initially paid $325 per month as rent.

In March 2007, at the suggestion of Victor's mother, Nina Little (Nina), respondents entered into a land sale contract to purchase this property from Victor for $28,000. Respondents were to pay 10 percent down and $400 per month. The parties executed a written contract to that effect and respondents paid Victor $2,800 as the 10 percent down payment. However, respondents did not receive a copy of this contract.

In May 2008, at respondents' insistence, Victor drafted a second written land sale contract. This contract stated that the selling price was $28,000 and that respondents owed Victor a balance of $22,150. The contract further provided that respondents were

---

[1]     All further statutory references are to the Code of Civil Procedure.

[2]     First names are used for convenience only. No disrespect is intended.

2.

to make fifty-five $400 payments and a final payment of $150 after which the property would be transferred to respondents.  Further, beginning January 2009, respondents were to start paying the property taxes and carrying their own insurance.  This contract was executed by respondents and Nina as Victor's agent.

Thereafter, respondents requested to increase their monthly payment to $450 in order to satisfy the contract terms sooner.  In response, Victor provided respondents with a third contract entitled "Month-to-Month Residential Rental Agreement with option to purchase."  This contract provided, under the heading "Additional Provisions," that,

> "… If all rent has been paid up to date and this contract has not been broke in any way shape or form, Victor Little will turn the Deed to the property over to Daniel and Karen Mitchell on February 01, 2013, providing that Daniel and Karen Mitchell have all funds available for any and all transfer fees and costs, and insurance, so that Victor Little can leave with clean hands, of this transfer and not be responsible for this property after the above mentioned date."

The parties executed this agreement on September 20 and 21, 2008.

On January 29, 2011, Victor transferred title to the property to Irigoyen by way of a quitclaim deed.

Through May 2011, respondents continued to make the payments on the land sale contract at the rate of $450 per month to Victor.  Respondents also paid the taxes and insurance.

On May 17, 2011, Irigoyen, along with "an armed body guard," went to the property and presented respondents with a copy of the quitclaim deed.  Respondents then showed Irigoyen the month-to-month rental agreement with option to purchase.  Respondents asked Irigoyen to honor this agreement but he refused to do so.

By letter dated May 20, 2011, Irigoyen sent respondents a copy of the quitclaim deed.  Irigoyen advised respondents that he had reviewed the month-to-month rental agreement with option to purchase and opined that it was inadequate because an essential term, the price, was missing from the agreement.  Irigoyen further stated that he expected

3.

respondents to make their $425 rent payment by June 3, 2011, or he would serve a three-day notice to pay rent or quit along with a 60-day notice to vacate the premises.

On June 10, 2011, respondents were served with a three-day notice to pay rent or quit. Victor was identified as the landlord but Irigoyen was identified as the person to pay. On June 15, 2011, Victor filed an unlawful detainer action against respondents seeking possession of the property.

Respondents demurred to the unlawful detainer action on the ground that Victor no longer had any interest in the property. In opposing the demurrer, Victor filed a declaration executed by Irigoyen. Irigoyen declared that he received title to the property but did not assume the property's liabilities and that plaintiff, i.e., Victor, "kept the right of possession until his liabilities under it, if any, extinguished and he could give [Irigoyen] exclusive, unconditional, and un-encumbered possession to it."

On August 3, 2011, respondents filed the underlying complaint naming Victor, Nina and appellants as defendants. Respondents alleged that appellants breached the land sale contract entered into between respondents and Victor by, among other things, disavowing the purchase component of the contract. Respondents requested damages for breach of the contract, fraud, and intentional infliction of emotional distress. Respondents further sought specific performance of the land sale contract.

On August 19, 2011, appellants filed their own unlawful detainer action against respondents. On September 1, 2011, Victor filed a request to dismiss his unlawful detainer action.

Thereafter, appellants moved to strike respondents' complaint as a SLAPP under section 425.16. The trial court denied appellants' motion on the ground that they did not carry their burden to establish that respondents' causes of action arose from protected activity.

# DISCUSSION

## 1.     *The anti-SLAPP statute.*

Section 425.16 was enacted in 1992 to provide a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.)  It is California's response to meritless lawsuits brought to harass those who have exercised these rights. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 644, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)  This type of suit, referred to under the acronym SLAPP, or strategic lawsuits against public participation, is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.  (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927.)

When served with a SLAPP, the defendant may immediately move to strike the complaint under section 425.16.  To determine whether this motion should be granted, the trial court must engage in a two-step process.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)

The court first decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.  (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 76.)  The moving defendant must demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue .…" (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)  A defendant can meet this burden by demonstrating that the act underlying the plaintiff's cause of action arises from any statement or writing made in, or in connection with an issue under

consideration or review by, a legislative, executive, judicial or other official proceeding or body. (§ 425.16, subd. (e); *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 (*Briggs*).) There is no need to separately demonstrate the existence of a "public issue." (*Sipple v. Foundation for Nat. Progress, supra,* 71 Cal.App.4th at p. 237.)

If the court concludes that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

The questions of whether the action is a SLAPP suit and whether the plaintiff has shown a probability of prevailing are reviewed independently on appeal. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.) In making these determinations, we consider the pleadings and supporting and opposing affidavits. However, we do not weigh the evidence. Rather, we accept the evidence favorable to the plaintiff as true and evaluate the defendant's evidence only to determine if it has defeated the plaintiff's evidence as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)

## 2. *Appellants failed to show that respondents' complaint arose from protected activity.*

Appellants argue that respondents' complaint was subject to a section 425.16 motion to strike because their demand letter threatening unlawful detainer litigation and Irigoyen's declaration filed in opposition to respondents' demurrer to Victor's unlawful detainer action are entitled to protection as statements made in, or in connection with, litigation. In support of their position, appellants characterize respondents' complaint as arising from their demand letter and declaration.

Appellants are correct that the filing of an unlawful detainer action and communications preparatory to or in anticipation of such litigation are within the protection of section 425.16. (*Briggs, supra,* 19 Cal.4th at p. 1115; *Feldman v. 1100*

*Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479.)  However, appellants have misconstrued the genesis of respondents' complaint.

Contrary to appellants' position, respondents' complaint is not based on appellants' statements threatening an unlawful detainer action or the filing of the unlawful detainer.  Rather, respondents' complaint challenges appellants' refusal to honor the land sale contract respondents entered into with Victor after Irigoyen obtained title to the property through a quitclaim deed.  When Irigoyen acquired title in this manner, he was subject to all equities that could have been asserted against Victor, the grantor. (*Veterans of Foreign Wars v. City of El Paso de Robles* (1998) 62 Cal.App.4th 1077, 1080.)

Thus, while appellants' demand letter and declaration may have triggered respondents' complaint and may be evidence in support of the complaint, they were not the cause of respondents' complaint.  Appellants have fallen victim to the logical fallacy that, because their demand letter and declaration preceded respondents' complaint, they must have caused respondents' complaint.  (*Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 160.)  However, the cause of respondents' complaint was appellants' alleged breach of the land sale contract.  Breach of contract is not an activity taken in furtherance of the constitutional rights of petition or free speech.  Accordingly, the trial court properly denied appellants' section 425.16 motion to strike.

7.

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded to respondents.

_____

LEVY, Acting P.J.

WE CONCUR:

_____

GOMES, J.

_____

FRANSON, J.

8.